UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LATHIO JENKINS,

        Plaintiff,

vs.                     Case No.  2:12-cv-74-FtM-29SPC

LAURA. BEDARD, Warden, LINDA. BROWN,
Chief of Housing Units, and MARY
ROBINSON-BOWER MASTER, Unit Manager,

        Defendants.

_____

**OPINION AND ORDER**

This matter comes before the Court upon review of Defendants' Motion to Dismiss (Doc. #19, Motion) filed pursuant to 42 U.S.C. § 1997(E)(a) and supporting exhibits (Doc. #19-1, Defs' Exhs. A-E) on June 29, 2012.  Plaintiff filed a response in opposition (Doc. #20, Response) on July 16, 2012.  This matter is ripe for review.

**I.**

Lathio Jenkins, a *pro se* plaintiff who is in the custody of the Secretary of the Florida Department of Corrections, initiated this action by filing a "Civil Rights Complaint" in the Twentieth Judicial Circuit Court in Glades County, Florida on June 16, 2011. See Doc. #1.  On February 9, 2012, Defendants removed the action to federal court.[1]  See docket.

---

[1]Defendants were served with process on January 12, 2012,  Doc. #1-18, and filed their notice of removal on February 9, 2012.

Plaintiff is proceeding on his Amended Complaint (Doc. #17, Amended Complaint) and attached exhibits (Doc. #17-1) against the following Defendants from Moore Haven Correctional (hereinafter "MHC") in their individual and official capacities: Laura Bedard, the Warden; Linda Brown, the Chief of the "Housing Units"; and, Mary Robinson-Bower Master, the "Unit Manager." See Amended Complaint. Plaintiff alleges Defendants violated his Eighth and Fourteenth Amendment rights during a strip search at MHC that occurred on February 1, 2011, at the direction of Defendant M. Robinson-Bower Master. See generally id. at 5.

Specifically, on the morning of February 1, Plaintiff states that Defendant Master and other correctional officers entered his housing unit with a canine to conduct a search of the housing unit.[2] Id. at 5. Plaintiff states that some of the inmates questioned why the correctional officers were entering with a canine and told the correctional officers they would file inmate grievances regarding the matter. Id. In response to the inmates' comments, Plaintiff claims Defendant Master told the inmates "since y'all want to grieve us . . . we're going to strip search everyone." Id. at 6.

---

[2]Plaintiff states that Correctional Corporation of America "assumed the responsibility" for operating MHC since August 1, 2010. Amended Complaint at 7. Warden Bedard relieved Warden Taylor when Correctional Corporation of America began operation of MHC.

Plaintiff alleges that one month prior to the strip search the Chief of the housing unit, Defendant Brown, encouraged her subordinates to retaliate against inmates who file grievances by directing other correctional officers to "write up the inmates" since they were writing grievances about the staff. Id. Plaintiff attributes liability on Warden Bedard for failing to correct or stop the custom or policy of the officers conducting retaliatory strip searches at MHC. Id. at 7. As relief, Plaintiff seeks monetary damages against the Defendants and any other relief the Court deems proper. Id. at 8.

## II.

Defendants move to dismiss the action based on Plaintiff's failure to exhaust his administrative remedies. See generally Motion. Defendants submit that Plaintiff did not follow the requisite three-step exhaustion process established by the Department of Corrections ("DOC"). Id. at 4-5. Specifically, Defendants argue that Plaintiff's appeal to the Secretary of the Florida Department of Corrections was returned without action to Plaintiff on April 12, 2011, based on Plaintiff's failure to follow the requisite exhaustion procedures. Id. at 5 (citing Defs' Exh. D). Plaintiff then initiated his civil action in November 2011 without filing any other inmate grievances. Id. (citing Defs' Exh. E).

In Response, Plaintiff opposes Defendants' Motion and contends that he exhausted all of his available administrative remedies. Response at 1.   Plaintiff states he never received a response to his informal grievance dated February 1, 2011, and the DOC's failure to respond within 10 days permitted him to continue to the next step in the exhaustion process.   Id. at 2; see also Id. at 10 (copy of Rule 33-103.011 setting forth time frames for DOC response).   Plaintiff further claims that the DOC impeded his ability to exhaust his administrative remedies by returning his grievance on appeal "without action."   Id. at 4.

### III.

The Prison Litigation Reform Act, which amended The Civil Rights of Institutionalized Persons Act, provides as follows:

> (a) Applicability of administrative remedies. No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility *until such administrative remedies as are available are exhausted*.

42 U.S.C. § 1997e(a)(emphasis added).   Although prisoners are not required to plead exhaustion, Jones v. Bock, 549 U.S. 199, 216 (2007), "[t]here is no question that exhaustion is mandatory under the PLRA, and that unexhausted claims cannot be brought in court." Id. at 211; see also Bingham v. Thomas, 654 F.3d 1171, 1175 (11th Cir. 2011).

To "properly exhaust" administrative remedies a prisoner must complete the administrative review process, as set forth in the applicable prison grievance process. <u>Jones</u>, 549 U.S. at 218.  A prisoner cannot satisfy the exhaustion requirement by filing an untimely or otherwise procedurally defective administrative grievance or appeal. <u>Woodford</u>, 548 U.S. at 92-103.  However, an administrative remedy that was not discovered, and which could not have been discovered through reasonable effort, until it was too late for it to be used is not an "available" remedy. <u>Goebert v. Lee County</u>, 510 F.3d 1312, 1324 (11th Cir. 2007).  A remedy is not available if it is unknown or unknowable because such remedy is not "capable for use for the accomplishment of a purpose." <u>Id.</u> at 1323.  Inmates are not required to "craft new procedures when prison officials demonstrate . . . that they will refuse to abide by the established ones." <u>Turner v. Burnside</u>, 541 F.3d 1077, 1083 (11th Cir. 2008)(citations omitted).  Additionally, "[a]n administrative remedy is not available for purposes of the PLRA . . . if prison officials render pursuit of the remedy irrational through serious threats of substantial retaliation." <u>Cole v. Sec'y Dep't of Corr.</u>, 451 F. App'x 827, 828 (11th Cir. 2011)(citing <u>Turner v. Burnside</u>, 541 F.3d 1077, 1084-85 (11th Cir. 2008)).

Whether an inmate has exhausted his available administrative remedies is a factual issue that is properly made by the court.

Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008).  Thus, "[e]ven though a failure-to-exhaust defense is non-jurisdictional, it is like a defense for lack of jurisdiction in one important sense: Exhaustion of administrative remedies is a matter in abatement, and ordinarily does not deal with the merits."  Id. (footnote, internal quotations, and citations omitted).  The defense of exhaustion is properly raised in a motion to dismiss as a "matter of judicial administration."  Id. at 1375.  Thus, the court is permitted to look beyond the pleadings to decide disputed issues of fact in connection with the exhaustion defense.  Id. at 1377, n.16.

The Court is not persuaded by Defendants' argument that Plaintiff failed to exhaust his administrative remedies.  Here, Defendants submit that on February 1, 2011, Plaintiff filed an informal grievance regarding the strip search that occurred that day.  See Defs' Exh. A.  Neither Plaintiff, nor Defendants attach a response to this informal grievance.  See generally Amended Complaint; Motion.

On March 2, 2011, Plaintiff then filed a formal grievance to the Warden.  Defs' Exh. B at 1.  On March 8, 2011, the Warden returned Plaintiff's grievance with a note that "the D.O.C. was in

control of this incident.  In the future, situations such as this will be more closely  monitored."[3]  Id. at 2.

On March 23, 2011, Plaintiff filed what appears to be another formal grievance to  "Moore Haven Correctional Facility."  Def's Exh. C at 1. On April 5, 2011, Plaintiff received a response denying the grievance because "all inmates are subject to be searched (i.e. pat search, strip search, locker search)."  Id. at 2.

On March 29, 2011, Plaintiff filed an appeal to the Secretary of the Department of Corrections.  Exh. D at 1.  On April 12, 2011, the Secretary responded to the grievance by returning the grievance "without action" finding Plaintiff's appeal was non-compliant with Chapter 33-103 "because your grievance at the institutional level was determined to be in non-compliance with the requirements of the rule."  Id. at 2.  Absent from the record is any evidence that any of Plaintiff's informal or formal inmate grievances were returned for non-compliance with the exhaustion rules.  See Defs' Exhs. A-E. In fact, the denial of Plaintiff's appeal to the Secretary of the DOC is the first time any response states that Plaintiff filed an inmate grievance in non-compliance with the DOC's rules.

---

[3]It is unclear who was operating MHC based on the response to this grievance.  As noted supra, Plaintiff states that Correctional Corporation of America "assumed the responsibility" for MHC on August 1, 2010.  Amended Complaint at 7.

ACCORDINGLY, it is hereby

**ORDERED:**

1.  Defendants' Motion to Dismiss (Doc. #19) is **DENIED.**

2.  Defendants shall file an Answer within **twenty-one (21) days** from the date on this Opinion and Order.

**DONE AND ORDERED** at Fort Myers, Florida, on this ___15th___ day of October, 2012.

JOHN E. STEELE
United States District Judge

SA: alj
Copies: All Parties of Record